

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Gold iPhone 12 Pro Max<br>Seized as FP&F No. 2023565500031701<br>("Target Device") | ) ) ) ) ) ) )   Case No. '23 MJ2827 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the    Southern    District of    California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, U.S.C. § 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Shawna M. Wilson, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Shawna M. Wilson, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ *(specify reliable electronic means)*.

Date:   08/04/2023

*Judge's signature*

City and state: San Diego, California    HON. MICHELLE M. PETTIT, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Shawna M. Wilson, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic Device:

> Gold iPhone 12 Pro Max
> Seized as FP&F No. 2023565500031701
> (**"Target Device "**)

the **Target Device**, as further described in Attachment A, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant related to the investigation and prosecution of Alejandro INZUNZA Romero for attempting to transport and move illegal aliens within the United States. The **Target Device** is currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2019 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy

1

at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for four years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers

and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including,

3

for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

    b. tending to identify accounts, facilities, storage Device, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On July 28, 2023, Border Patrol Agents A. Overbay, A. Medina, M. Caniparoli, and A. Andrade-Arellano, were performing assigned duties in Campo Border Patrol Station's area of responsibility. Agent Overbay was assigned to the Campo Station Abatement Team (CSAT) dressed in plain clothes, wearing his agency issued plate carrier vest with badge and insignias visible. Agent Overbay was driving an unmarked agency vehicle with operational emergency lights and siren. Agents Medina, Caniparoli, and Andrade-Arellano were dressed in agency issued duty uniform with badges and insignia visible and driving marked Border Patrol vehicles.

12. At approximately 3:47 PM, Agent Overbay was observing traffic from the corner of State Route(SR) 94 and Forest Gate Road, when he observed a dark gray two door Audi sedan bearing a California License plate slowly driving east in front of him. Agent Overbay observed a single male driver and noticed the vehicle was sitting very low in the rear to where the rear tires were up within the vehicle wheel well. In Agent Overbay's experience this is common with vehicles that are concealing several undocumented individuals in the back seat. Agent Overbay turned east onto SR-94 so that he could further observe the Audi but momentarily lost visual of it. Agent Overbay regained visual of the Audi driving at a very high rate of speed and crossing over the double yellow lines to pass other vehicles. Agent Overbay advised other agents in the field via agency radio to be on the lookout for the Audi and use caution if driving on SR-94. Agent Overbay requested records checks through San Diego Tactical Communications Center dispatch on the Audi. Records checks revealed that the Audi was registered to either Mihtzu or Alejandro INZUNZA Romero, out of Chula Vista, California, with no prior travel in the Campo area.

13. At approximately 3:50 PM, Agent Medina advised he observed the Audi stop behind him near Shockey Truck Trail and crash into a dirt berm while attempting to turn around back westbound. A few moments later Agent Overbay observed the Audi pass him traveling west on SR-94. Agent Overbay observed front end damage to the front passenger

5

side of the Audi, along with what appeared to be several individuals moving around within the vehicle. Agent Overbay turned around so that he could further observe the Audi and attempt a vehicle stop if safe to do so. Agent Overbay traveled west in the same direction as the Audi and observed INZUNZA erratically pass several vehicles almost hitting traffic head on.

14. At approximately 3:51 PM, Agent Soriano, who was operating a mobile scope, observed the Audi briefly pull over next to the Dollar General located on SR-94 across from a Cal Fire Station and continue west on SR-94. Agent Overbay was able to see the Audi periodically while driving west on SR-94. At approximately 3:53 PM, Campo Border Patrol Station advised via service radio that they received a report from the Cal Fire Station stating they observed four individuals get out of a vehicle and run into their parking lot. Cal Fire indicated four individuals were attempting to conceal themselves near their semi-trailer.

15. Agents M. Caniparoli and A. Andrade-Arellano responded to the area. Agent Andrade-Arellano located two individuals, later identified as material witnesses, Napoleon CIRIACO Luciano and Adrian LUCIANO-Chula, and conducted an immigration inspection. CIRIACO and LUCIANO stated they are citizens of Mexico without any immigration documentation allowing them to enter or remain in the United States legally. Agent Caniparoli apprehended the two remaining individuals including one individual, later identified as material witness, Cecila FLORES Leonardo, and performed an immigration inspection. Both individuals, including FLORES, stated they are citizens of Mexico without immigration documents allowing them to enter or remain in the United States legally. At approximately 3:58 PM, all four individuals, including material witnesses, CIRIACO, FLORES, and LUCIANO, were placed under arrest.

16. Agent Overbay lost visual of the Audi but continued west on SR-94. Agent Overbay observed debris and significant damage to the guardrail as he approached Call Box 401 and began to search the area. At approximately 4:04 PM, Agent D. Mazzola, from

6

Brown Field Border Patrol Station advised he located the Audi crashed in an area known to Border Patrol Agents as, "New Construction." Agent Mazzola observed a male, later identified as the defendant, Alejandro INZUNZA Romero, going up the hill south of the Audi. Agent Mazzola temporarily detained INZUNZA who was suspected to be the driver of the Audi. Agent Medina responded to the location and confirmed the Audi was the same one in which agents were attempting to observe. At approximately 4:15 PM, Agent Overbay placed INZUNZA under arrest.

17. At the time of arrest, a Gold iPhone 12 Pro Max (**Target Device**) was found on INZUNZA's person. INZUNZA claimed the phone as his. This device was subsequently seized.

18. All three material witnesses, Napoleon CIRIACO Luciano, Cecila FLORES Leonardo, and Adrian LUCIANO Chula stated that they are citizens of Mexico. All three added that they entered the United States through a fenced area of the border, on July 28, 2023. All three stated that smuggling arrangements were made by them or on their behalf. All three stated that they agreed to pay between $10,000 and $12,000 U.S. dollars to be smuggled all the way to Los Angeles, California. All three stated that they were taken to the border fence where they were instructed to walk until they reached a highway. FLORES stated that they used a ladder to climb over the fence into the United States. All three stated that they walked for hours until they arrived at the highway, where they would be picked up by a vehicle. FLORES stated that the smuggler gave her the description of the vehicle that would be picking them up and it was a black car. CIRIACO stated that they were being guided by the smuggler remotely via a cell phone. FLORES stated that when the vehicle arrived, they all ran to the vehicle and got in.

19. CIRIACO and LUCIANO stated that the driver instructed them to get in the vehicle and to get down. All three stated that the vehicle they got into was a dark black color. The material witnesses described the driver of the vehicle as a Hispanic/Mexican, male, light dark complexion, and around his 20's or 30's. All three stated that the driver

was driving at a high rate of speed. FLORES and CIRIACO stated that they were scared and or felt fear because of how the driver was driving and how fast he was going. LUCIANO stated that at one point he felt the vehicle was going to roll over, when he made a turn at high speed. FLORES stated that she was vomiting throughout the vehicle ride. All three stated that not long after the driver stopped the vehicle and told them to exit the vehicle. LUCIANO stated that the vehicle did not make a complete stop when he exited the vehicle. CIRIACO stated that after they exited the vehicle the driver took of at a high rate of speed. All three stated that shortly after they were apprehended by Border Patrol.

20. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using the **Target Device** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on **June 28, 2023, through July 28, 2023**.

## METHODOLOGY

21. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary

8

word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

23. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

24. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

9

## CONCLUSION

25. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of an alien smuggling violation of Title 8, United States Code, Sections 1324.

26. Because the **Target Device** was seized at the time of the defendant's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from **June 28, 2023, through July 28, 2023.**

27. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, seize the item listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Shawna M. Wilson
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 4th day of August 2023.

_____
HON. MICHELLE M. PETTIT
United States Magistrate Judge

10

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

The following property is to be searched:

Gold iPhone Pro Max
Seized as FP&F No. 2023565500031701
**("Target Device")**

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

11

## ATTACHMENT B

### ITEM TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **June 28, 2023 through July 28, 2023**:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b. tending to identify accounts, facilities, storage Device, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.